## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MELANIE S. TURNER,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **CASE NO. 2:12-CV-2053-SLB** |
| | } | |
| **MCKESSON CORPORATION,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This case is currently before the court on McKesson Corporation's Motion to Dismiss. (Doc. 4.)[1] Upon consideration of the Motion, the relevant law, and the arguments of counsel, the court is of the opinion that defendant's Motion is due to be granted in part and denied in part.

## I. STANDARD OF REVIEW

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations;" however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned each document as it is filed in the court's record.

omitted).[2]  "Factual allegations must be enough to raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)."  *Id*. (internal citations and footnote omitted).  The plaintiff

must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

"When considering a motion to dismiss, all facts set forth in the plaintiff's

complaint 'are to be accepted as true and the court limits its consideration to the pleadings

and exhibits attached thereto.'"  *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231

(11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir.

1993)).  All "reasonable inferences" are drawn in favor of the plaintiff.  *St. George v.

Pinellas Cnty.,* 285 F.3d 1334, 1337 (11th Cir. 2002).  "'[U]nsupported conclusions of

law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6)

dismissal.'"  *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v.

Butler Cnty.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).  Furthermore, "[a] complaint

may not be dismissed because the plaintiff's claims do not support the legal theory he

relies upon since the court must determine if the allegations provide for relief on *any*

---

[2] In *Bell Atlantic Corp. v. Twombly,* the United States Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," which was set forth in *Conley v. Gibson.  See Twombly,* 550 U.S. at 561 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)).  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 563.  The "decision in *Twombly* expounded the pleading standard for 'all civil actions.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009).

possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) (citation omitted).

## II. FACTS AND PROCEDURAL HISTORY[3]

Melanie Turner ("plaintiff"), a Caucasian female in her mid-fifties, began working for D and K Corporation in January 2005 as a Customer Service Manager.  (Doc. 1 ¶¶ 6-8.)  Plaintiff holds a business degree and has more than twenty years of experience in managerial roles.  (*Id.* ¶ 34.)  Plaintiff was hired by the former company Vice President, Tom Smith ("Smith").  (*Id.* ¶ 8.)  In 2006, after plaintiff was hired, McKesson Corporation ("defendant") acquired D and K.  (*Id.* ¶ 9.)

As part of her employment with defendant, plaintiff received "merit adjustment pay increase[s] for annually meeting standards."  (*Id.* ¶ 24.)  In November 2009, plaintiff underwent "major in-patient surgery."  (*Id.* ¶ 23.)  As a result of the surgery, plaintiff took paid vacation leave in addition to two weeks of leave under the Family and Medical Leave Act ("FMLA").[4]  (*Id.* ¶ 23.)  During the following spring of 2010, plaintiff underwent workplace evaluations.  (*Id.* ¶ 24.)  The evaluations included calculation of plaintiff's "usual merit adjustment pay increase for annually meeting standards."  (*Id.*)  Following the evaluations, Webb delivered to plaintiff her "evaluation and merit adjustment form," at which point plaintiff discovered "that her merit adjustment had been

---

[3] The "facts" are drawn from the Complaint and for purposes of defendant's Motion to Dismiss are accepted as true.

[4] The Complaint does not state the total number of weeks plaintiff was absent from work as a result of her surgery.

pro-rated [sic] to a lower effective rate of 3.00%." (*Id.*)  According to plaintiff, the reduction "directly" resulted from her use of FMLA leave, and Webb stated the same when plaintiff inquired about the reduction.  (*Id.* ¶¶ 24-25.)  Plaintiff alleges that Webb also took FMLA leave during 2009, but her merit adjustment was not prorated to a lower rate, because, as Webb told plaintiff, she worked from home while on leave.  (*Id.* ¶ 26.)

Plaintiff complained about the execution of company policies regarding FMLA leave, and the next day she was assigned to report to a new supervisor, Harold Fagan ("Fagan").  (*Id.* ¶ 31.)  Fagan was substantially younger than plaintiff and a newer employee, and plaintiff previously trained Fagan after he was hired.  (*Id.* ¶ 32.)  Plaintiff alleges that by assigning her to report to Fagan, defendant attempted to intimidate and retaliate against plaintiff for "complaining about her rights and engaging in protected activity."  (*Id.* ¶ 33.)

In 2011, Fagan resigned, and plaintiff applied for his vacant position.  (*Id.* ¶ 35.)  Defendant hired Lachera Church ("Church"), an African-American female.  (*Id.* ¶ 37.)  Church was a newer and younger employee with less managerial experience than plaintiff.  (*Id.* ¶ 38.)  Over the following months, plaintiff's supervisor changed several times as she was reassigned to various employees.  (*Id.*)  When two new management positions were created in 2012, plaintiff was prevented from interviewing for them, and the positions were allegedly filled in violation of defendant's policies.  (*Id.* ¶¶ 40-41.)

On April 23, 2012, plaintiff was informed that her position of Customer Service

4

Manager I was being eliminated effective April 30, 2012.  (*Id.* ¶ 44.)  This resulted in plaintiff's termination.  (*Id.* ¶ 46.)  At the time, there were vacant managerial positions; however, plaintiff was not allowed to interview for them.  (*Id.* ¶ 46-47.)  Plaintiff claims the elimination of her position and subsequent termination were in retaliation for her engaging in protected activity.  (*Id.* ¶ 48.)

On June 6, 2012, plaintiff filed her Complaint against defendant alleging claims of interference and retaliation in violation of the FMLA as well as race discrimination and retaliation in violation of 42 U.S.C. § 1981.  (Doc. 1.)  Defendant filed its Motion to Dismiss and Brief in Support on June 27, 2012.  (Docs. 4 & 5.)

## III. DISCUSSION

### A.  FMLA Interference

Defendant challenges Count One of plaintiff's Complaint, which alleges that defendant interfered with her right to take qualified leave as provided under the FMLA. (Doc. 1 ¶¶ 50-51.)  It appears that the primary basis for plaintiff's interference claim is her allegation that defendant reduced or prorated plaintiff's "merit adjustment pay increase for annually meeting standards" as a result of plaintiff taking FMLA leave.  (*See* doc. 1 ¶¶ 24-30.)  Defendant argues that plaintiff fails to state a claim of FMLA interference because plaintiff's merit adjustment pay increase was not the type of bonus which defendant was obligated to pay in full, and thus it was lawfully prorated.  (Doc. 5 at 6-8.)  As discussed below, the court finds that plaintiff sufficiently states a claim of

interference under the FMLA, because it is unclear on the face of the Complaint whether the bonus at issue is of the type that may be properly prorated in the event of FMLA leave.

The FMLA guarantees eligible employees the right to "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). The Act prohibits employers from "interference," defined as an action by the employer to "interfere with, restrain, or deny" an employee's FMLA leave or to discharge or discriminate against an employee for taking or requesting FMLA leave. *Id.* § 2615(a). To state a claim of interference, an employee "need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Strickland v. Waterworks & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206-07 (11th Cir. 2001) (citations omitted).  The intention and motivation of the employer are "irrelevant" when deciding an FMLA interference case as the plaintiff need only demonstrate that she was entitled to a right denied by the employer. *See id.* at 1208.

Upon return from FMLA leave, an employee is entitled "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B).  However, the FMLA expressly limits the restoration of such benefits to those "which the employee would have been entitled had the employee not taken the leave." *Id.* § (a)(3)(B).  Further, regulations

6

promulgated by the Department of Labor[5] ("DOL") to carry out the FMLA speak

specifically to the accrual during FMLA leave of bonuses as a form of pay:

> An employee is entitled to any unconditional pay increases which may have occurred during the FMLA leave period, such as cost of living increases. Pay increases conditioned upon seniority, length of service, or work performed must be granted in accordance with the employer's policy or practice with respect to other employees on an equivalent leave status for a reason that does not qualify as FMLA leave.
>
> . . .
>
> Equivalent pay includes any bonus or payment, whether it is discretionary or non-discretionary, made to employees consistent with the provisions of paragraph (c)(1) of this section. However, if a bonus or other payment is based on the achievement of a specified goal such as hours worked, products sold or perfect attendance, and the employee has not met the goal due to FMLA leave, then the payment may be denied, unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave.

29 C.F.R. § 825.215(c)(1)-(2).  The regulations, do not, however, address proration of

bonuses as a result of FMLA leave.  The DOL has stated in opinion letters[6] that employee

---

[5] The FMLA provides that the Secretary of Labor "shall prescribe such regulations as are necessary to carry out" the provisions of the law.  29 U.S.C. § 2654.  "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

[6] While administrative opinion letters are not entitled to the same standard of deference under *Chevron*, they "'are entitled to respect . . . but only to the extent that those interpretations have the power to persuade.'"  *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1238 (11th Cir. 2002) (quoting by parenthetical *Christensen v. Harris Cnty.*, 529 U.S. 576, 578 (2000)).

bonuses may be prorated due to FMLA leave depending on the criteria on which the

bonuses are awarded:

> If a bonus is calculated based on hours worked or yearly or monthly earnings, the FMLA leave taker would naturally receive a lesser amount. Conversely, any methodology for calculating bonuses that are not based on worktime or accrued earnings cannot be reduced at all for FMLA leave takers who qualified for the bonus before they started FMLA leave and return to work and continue an otherwise perfect record for the remainder of the bonus period.

*Sommer v. The Vanguard Grp.*, 461 F.3d 397, 400 (3d Cir. 2006) (quoting 1994 DOL

Opinion Letter n.1).  Thus, while the FMLA guarantees restoration of certain employee

benefits after the employee returns from FMLA leave, bonuses based on work

performance or some other criteria may be reduced as a result of FMLA leave.  *See id.*

Based on the above-quoted DOL regulations and opinion letter, at least one circuit

court has held that an employee bonus based on hours worked could be prorated due to

the employee's taking FMLA leave.  *Sommer*, 461 F.3d at 401.  In *Sommer*, the plaintiff

asserted an FMLA interference claim after he returned from FMLA leave and the

defendant employer prorated his annual bonus on the basis of the time he was absent.  *Id.*

at 398.  The central issue was whether under the defendant's partnership plan, had

plaintiff not taken leave, would he have received the bonus for mere attendance as

opposed to work productivity.  *Id.*  In affirming summary judgment for the defendant, the

Third Circuit held that defendant's partnership plan allowed for a "production bonus"

requiring plaintiff to work over a certain amount of hours to receive the full bonus

amount. *Id.* at 404-05. The court distinguished between bonuses based on "job-related performance such as for perfect attendance [and] safety (absence of injuries or accidents on the job)" and bonuses based on job production, e.g. "exceeding production goals." *Id.* at 400.

After reviewing the underlying purpose of the FMLA and the DOL regulations, as well as looking to DOL opinion letters specifically addressing proration of bonuses, the court reasoned that bonuses based on productivity could lawfully be prorated based on an employee's FMLA leave:

> The precept that we derive from the regulations and DOL opinion letters is that although an employer may not reduce an absence of occurrence bonus paid to an FMLA leave taker if the employee was otherwise qualified but-for the taking of the FMLA leave, that employer may prorate any production bonuses to be paid to an FMLA leave taker by the amount of any lost production (be it hours or another quantifiable measure of productivity) caused by the FMLA leave. This rule is an appropriate application of the admonition found at 29 U.S.C. § 2614(a)(3) that, while on FMLA leave, an employee is *not* entitled to the accrual of any right of employment, but *is* entitled to those rights of employment "to which the employee would have been entitled had the employee not taken the leave."

*Id.* at 401. Because defendant's partnership plan required plaintiff to work in excess of a certain number of hours, the benefit under the plan was deemed a production bonus "'requir[ing] some positive effort on the [plaintiff's] part at the workplace,' as distinguished from a bonus that merely rewards an employee for 'compliance with rules.'" *Id.* at 404 (quoting 1994 DOL Opinion Letter). Thus, the court held proration of

plaintiff's bonus was lawful under the FMLA.  *Id.* at 404-05; *cf. Dierlam v. Wesley Jessen Corp.*, 222 F. Supp. 2d 1052, 1057 (N.D. Ill. 2002) (granting summary judgment for plaintiff employee and finding that defendant wrongfully prorated plaintiff's bonus as a result of her FMLA leave because the bonus only required plaintiff's continued employment during a period of corporate reorganization and was not contingent on productivity or other standards).

According to the Complaint, plaintiff took two weeks of FMLA leave in November 2009 for major surgery.  (Doc. 1 ¶ 23.)  The following spring, in 2010, plaintiff's workplace evaluations included a review of "her usual merit adjustment pay increase *for annually meeting standards*."  (*Id.* ¶ 24 (emphasis added).)  After receiving her evaluation and merit adjustment form, plaintiff "found that her merit adjustment had been pro-rated [sic] to a lower effective rate of 3.00% directly as a result of use of FMLA leave."  (*Id.*)  Plaintiff further alleges that Webb, who took FMLA leave the same year, did not have a reduced bonus.  (*Id.* ¶ 26.)  Webb told plaintiff that her bonus was not prorated because Webb worked from home during her leave.  (*Id.*)  Thus, plaintiff argues, had she been offered the chance to work from home during her leave and "offered the same benefits as Webb, she could have worked from home and avoided proration of her merit adjustment."  (*Id.* ¶ 28.)

Defendant argues that plaintiff fails to state a claim of interference under the FMLA because plaintiff's "merit adjustment pay increase" was not the type of bonus

10

which defendant was obligated to pay in full–in other words, it was a "production" bonus, which can be prorated without violating the FMLA.  (Doc. 5 at 6-8.)  Seizing on plaintiff's allegation in paragraph 28 of the Complaint that plaintiff could have avoided the reduction in her bonus had she had the opportunity and means to work from home, defendant concludes that plaintiff's merit pay increase is "undisputably a 'production bonus,'" which may be properly prorated for absences due to FMLA leave as held in *Sommers*.  (Doc. 5 at 8.)  Plaintiff labels the bonus as a "merit adjustment pay increase." (Doc. 1 ¶ 24.)  The nature of how plaintiff typically earned the bonus is not explained in the Complaint, outside of the fact it is given for "annually meeting standards."  (*Id.*) Thus, although it appears the bonus may be a "production" bonus, the type of bonus is not entirely clear from the face of the Complaint.  On a motion to dismiss, the court looks only to the allegations in the Complaint, *Grossman*, 225 F.3d at 1231, and does not, as did the courts in *Sommers* and *Dierlam*, have the benefit of additional evidence on summary judgment to determine the precise character of the bonus.  Although defendant argues that, by definition, plaintiff's use of the phrase "merit adjustment pay increase" actually connotes a performance or production type of bonus, the court is unwilling to make such a determination at this stage of the case based solely on plaintiff's word choice.  (Doc. 8 at 7.)

Construing the facts in Complaint as true, the court finds that plaintiff sufficiently states a claim of interference under the FMLA.  In short, plaintiff alleges that her bonus,

11

which she allegedly qualified for, was improperly prorated to a lower rate "directly as a result" of her taking FMLA leave.  (Doc. 1 ¶ 24.)  Because it is unclear on the face of the Complaint whether the bonus was the type which may be properly prorated as a result of FMLA leave, defendant's Motion to Dismiss plaintiff's interference claim will be denied.

### B.  FMLA Retaliation

Defendant also contests the sufficiency of plaintiff's claim that defendant retaliated against her in violation of the FMLA.  (Doc. 1 ¶ 52-54.)  "To succeed under a theory of FMLA retaliation, [plaintiff] must show that [defendant] intentionally 'discriminated against [her] because [s]he engaged in activity protected by the Act." *Foshee v. Ascension Health-IS, Inc.*, 384 F. App'x 890, 891 (11th Cir. 2010) (per curiam) (quoting *Strickland*, 239 F.3d at 1206).  In the absence of direct evidence of retaliation, the court requires plaintiff to establish retaliation under the *McDonnell Douglas*[7] framework.  *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). Under *McDonnell Douglas*, "plaintiff must first establish a prima facie case by demonstrating (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity."  *Id.* (citation omitted).

Plaintiff's Complaint sufficiently states a claim of FMLA retaliation.  Plaintiff states that upon receiving her evaluation and merit adjustment form in the spring of 2010,

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

12

"she found that her merit adjustment had been pro-rated [sic] to a lower effective rate of 3.00% directly as a result of use of FMLA leave."  (Doc. 1 ¶ 24.) This allegation is sufficient to withstand a motion to dismiss plaintiffs retaliation claim under the FMLA.

Although the Complaint contains a number of alleged acts that purport to show indirect evidence of defendant's retaliation against plaintiff,[8] the court need not look any further than plaintiff's statement that her merit adjustment was prorated to a lower rate "directly as a result" of her taking FMLA leave.  (*Id.* ¶ 24.)  Such an allegation, taken as true for purposes of defendant's Motion to Dismiss, satisfies the prima facie elements under the *McDonnell Douglas* framework.  As an initial matter, defendant does not dispute for the purposes of its Motion to Dismiss that plaintiff engaged in protected activity under the FMLA by taking leave in 2009 due to her surgery.  (Doc. 8 at 4.)  The standard for determining an adverse employment action for an FMLA retaliation claim is whether or not the conduct affects a "*serious and material* change in the terms,

---

[8] Said acts include: improper handling of H.R. complaints, (doc. 1 ¶¶ 19-20), reassignment to a younger supervisor, (doc. 1 ¶ 31-32), not being considered for a promotion, (doc. 1 ¶ 37), prevention from interviewing for open managerial positions, (doc. 1 ¶ 41), suspiciously not introducing plaintiff to a new employee hired to fill a vacant management position, (doc. 1 ¶ 43), eliminating plaintiff's position, (doc. 1 ¶ 44), and eventual termination, (doc. 1 ¶¶ 44, 48).  To the extent plaintiff contends that the handling of complaints, reassignment, and non-introduction constitute a claim of FMLA retaliation, the court finds that they do not constitute adverse actions under the *McDonnell Douglas* framework.  *See Foshee*, 384 F. App'x at 891.  Plaintiff's claims that she was not considered for a promotion, barred from interviews, that her position was eliminated, and that she was terminated fail to satisfy the causation prong, because those events transpired in either 2011 or 2012, approximately two years or more after plaintiff took FMLA leave.  "A three to four month disparity between the statutorily protected [activity] and the adverse employment action is not enough."  *Thomas v. Cooper Lighting, Inc.* 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (citation omitted).

conditions, or privileges of [plaintiff's] employment." *Foshee*, 384 F. App'x at 891.

Under this standard, lost benefits and reduced salary are deemed adverse employment

actions. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1236 (11th Cir. 2001)

(affirming judgment as a matter of law for defendant employer in Title VII discrimination

case because plaintiff "did not suffer any reduction in salary, loss of benefits, denial of

promotions, workplace reassignment, transfer, or change in permanent job title," and

thus, failed to prove a serious and material change in the terms and conditions of his

employment).  Finally, although the Complaint does not state exactly how long after

plaintiff returned from FMLA leave that defendant prorated her bonus, the allegation that

the reduction occurred directly as a result of her taking leave, satisfies the element of

causal relation between the adverse action and protected activity for purposes of deciding

defendant's Motion to Dismiss.  *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d

791, 799 (11th Cir. 2000) ("To establish the causal connection element, 'a plaintiff need

only show that the protected activity and the adverse action were not wholly unrelated.'"

(quoting *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1354 (11th Cir.1999))).

Construing the facts in the Complaint as true, plaintiff sufficiently states a claim of

retaliation under the FMLA.  Thus, defendant's Motion will be denied as to Count Two

of the Complaint.

**C.  Race Discrimination–42 U.S.C. § 1981**

Plaintiff alleges that defendant intentionally and willfully discriminated against her on the basis of her race (Caucasian) in violation of 42 U.S.C. § 1981 ("Section 1981"). (Doc. 1 ¶ 55-58.)  Defendant does not move to dismiss plaintiff's Section 1981 discrimination claim as to the allegations surrounding the promotion of Lachera Church, an African-American, (*see* doc. 5 at 11-12), but moves to dismiss any other claims of race discrimination for failure to state a claim.  The court agrees with defendant that any claims of racially discriminatory treatment with regard to (1) internal complaints, (2) treatment of medical leave, (3) termination, and (4) failure to promote plaintiff to management positions allegedly created and filled in 2012 are not supported by sufficient factual allegations to state a claim for which relief can be granted.  (*See* doc. 5 at 12.)

Section 1981 protects employees from racial discrimination and retaliation regarding their rights "to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings."  Section 1981 applies to workplace discrimination based on race.  *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).  "Thus, [Section] 1981 provides a cause of action for race-based employment discrimination including wrongful termination, retaliation, and a racially hostile work environment." *Melton v. Nat'l Dairy LLC*, 705 F. Supp. 2d 1303, 1315 (M.D. Ala. 2010).  It is also well-settled that Section 1981 is applicable to employment discrimination against Caucasians. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-87 (1976).

15

The Eleventh Circuit has held that claims for race discrimination are cognizable under both Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* and Section 1981 and "'have the same requirements of proof and use the same analytical framework.'" *Blue v. Dunn Constr. Co., Inc.*, 453 F. App'x 881, 883 (11th Cir. 2011) (per curiam) (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). This standard also applies to claims of retaliation under Section 1981. *See CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1955 (2008); *Selby v. Tyco Healthcare Grp., L.P.*, 301 F. App'x 908, 912 (11th Cir. 2008) (per curiam). To state a claim of race discrimination under Title VII based on indirect evidence, the plaintiff must show "(1) that he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees who are not members of the protected class more favorably." *Batch v. Jefferson Cnty. Child Dev. Council*, 183 F. App'x 861, 862 (11th Cir. 2006) (per curiam) (citing *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000)).

The only factual statements in the Complaint relating to racial discrimination concern defendant's failure to promote. (Doc. 1 ¶¶ 35-38.) To the extent plaintiff purports to state claims of racial discrimination based on defendant's handling of plaintiff's internal complaints, (doc. 1 ¶¶ 19-20), FMLA leave, (doc. 1 ¶¶ 23-33), reassignment to Fagan, (doc. 1 ¶ 31-36), prevention from interviewing for vacant

positions (other than the hiring of Lachera Church), (doc. 1 ¶¶ 40-41), and termination,

(doc. 1 ¶¶ 46-48), the Complaint fails to state a claim upon which relief can be granted.

### D.  Retaliation–42 U.S.C. § 1981

Defendant also challenges the sufficiency of plaintiff's Section 1981 retaliation

claim under Count Four of the Complaint.  As stated above, retaliation claims under

Section 1981 are based on the same framework required to state claims under Title VII.

*See Selby*, 301 F. App'x at 912.  Section 1981 has been held to include claims by

employees who have endured retaliatory treatment for opposing discrimination against

themselves and other coworkers.  *Tucker v. Talladega City Sch.*, 171 F. App'x 289, 295

(11th Cir. 2006) (per curiam) ("[Section] 1981 encompasses a cause of action for

retaliation . . . for a plaintiff's opposition to race discrimination, whether or not he

personally is the victim of that race discrimination.").  A retaliation claim under Section

1981 requires that the claimant employee allege and prove that "'[ (1) ] he engaged in

statutorily protected activity, [ (2) ] he suffered a materially adverse action, and [ (3) ]

there was some causal relation between the two events.'" *Selby*, 301 F. App'x at 912

(alteration in original)  (quoting *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261,

1277 (11th Cir. 2008)).

Although the Complaint contains some facts alleging racial discrimination,

plaintiff points to no specific protected activity for which she was retaliated against based

on race.  Plaintiff states that "[a]ctions taken by Defendant constituted retaliation against

17

Plaintiff in violation of her . . . right to voice complaints of discrimination." (Doc. 1 ¶ 61.) Further, plaintiff claims that on three separate occasions she "made formal complaints" to a regional HR manager that "she was suffering from retaliation for protected activity." (*Id.* ¶ 21.) Plaintiff also complained about defendant's FMLA policies following her evaluations and proration of her merit adjustment. (*Id.* ¶ 31.) However, plaintiff never states the protected activity to which she generally refers, and based on the facts alleged, the complaints were in response either to inappropriate sexually explicit comments made by a superior, (doc. 1 ¶¶ 18-22), or defendant's alleged "unfair execution of company policies regarding FMLA leave," (doc. 1 ¶ 31). There are no allegations of protected activity relating to any form of racial discrimination against plaintiff or others. In the absence of any facts alleging racial discrimination or retaliation as a result of protected activity, plaintiff's accusation of retaliation is a mere recitation of formalistic elements insufficient to state a cause of action. Defendant's Motion is due to be granted as to plaintiff's claim of retaliation under Section 1981.

## IV. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is due to be denied as to plaintiff's claims of FMLA interference and FMLA retaliation. Defendant's Motion to Dismiss is due to be granted as to all claims of discrimination under Section 1981 other than the failure to promote claim alleged in paragraphs 35 - 38 of the Complaint. Defendant's Motion to Dismiss is due to be granted as to plaintiff's Section 1981

retaliation claim.  An Order in accordance with this Memorandum Opinion will be

entered contemporaneously with this Opinion.

      **DONE** this 10th day of August, 2012.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE