## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MELANIE S. TURNER, | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| v. | } | **CASE NO. 2:12-CV-2053-SLB** |
| | } | |
| MCKESSON CORPORATION, | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

This case is currently before the court on McKesson Corporation's Motion to Dismiss Amended Complaint.  (Doc. 15.)  Upon consideration of the Motion, the relevant law, and the arguments of counsel, the court is of the opinion that defendant's Motion is due to be granted.

## I. STANDARD OF REVIEW

A complaint is required to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted.  In order to survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(internal quotation marks and citations omitted).[1]  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and footnote omitted).  The plaintiff need not prove his case, but must plead "enough facts to state a claim to relief that is *plausible* on its face." *Id.* at 570 (emphasis added). Additionally, "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  Further, all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).  However, "'[u]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal.'" *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).  Therefore, though the court must accept all factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual

---

[1]  In *Bell Atlantic Corp. v. Twombl*y, the United States Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," which was set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46).  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 562-63.  The "decision in *Twombly* expounded the pleading standard for 'all civil actions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

allegation." *Iqbal*, 556 U.S. at 678.

## II. FACTS AND PROCEDURAL HISTORY[2]

Melanie Turner ("plaintiff") is a white female in her mid-fifties who began to work at D and K Corporation in January of 2005 as a Customer Service Manager.  (Doc. 14 ¶¶ 6-8.)  Plaintiff holds a business degree and has more than twenty years of experience in managerial roles.  (*Id.* ¶ 81.)  She was hired by D and K's former company Vice President, Tom Smith, (*id.* at ¶ 8), before it was acquired by McKesson Corporation ("defendant") in 2006, (*id.* ¶ 9).  After her hiring, she worked for defendant for over seven years, (*id.* ¶ 81), before being terminated, (*id.* ¶ 112, 116).

In November of 2009, plaintiff underwent "major in-patient surgery," which resulted in her taking two weeks of leave from work under the Family and Medical Leave Act ("FMLA"), and an additional week of paid leave.  (*Id.* ¶ 34.)  During the following spring of 2012, McKesson Corporation gave plaintiff an employee evaluation.  (*Id.* ¶ 36.)  The evaluation included a performance review, which was a "primary factor" in determining whether an employee was eligible for a salary increase under defendant's "Merit Increase[]" policy.  (*Id.* ¶ 31.)  The merit adjustment under this policy operates to raise an employee's salary by a certain percentage, and once added in (along with any other adjustment increases the employee has earned during the year), the resulting figure serves as the employee's base

---

[2]  The "facts" are drawn from the Complaint and for purposes of defendant's Motion to Dismiss are accepted as true.  *See Twombly*, 550 U.S. at 572; *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321-22 (11th Cir. 2012) (citing *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1271 n.4 (11th Cir. 2012)).

pay for the following year.  (*Id.* ¶ 32-33.)  As a result of plaintiff's evaluation, she earned a merit adjustment increase of 3.17% for fiscal year 2010.  (*Id.* ¶ 37, 39.)  However, when plaintiff received her evaluation and merit adjustment form, it reflected that the merit adjustment increase had been prorated to 3.00%—allegedly as a result of her FMLA leave. (*Id.* ¶ 42, 46-47.)  The prorating of plaintiff's merit adjustment would have caused her to earn a lower salary than she otherwise would have gotten every subsequent year that she remained employed with defendant. (*Id.* ¶ 48-50.)  Upon asking Tammi Webb ("Webb"), Tom Smith's assistant, (*id.* at 11), about why her merit adjustment had been prorated, Webb allegedly told plaintiff that it was because she had taken FMLA leave.  (*Id.* ¶ 51.)

Once she learned this, plaintiff complained to Webb, (*id.* ¶¶ 51-55), who also had certain human resources responsibilities, (*id.* ¶ 11), and Gary Smith, the manager of the distribution center where plaintiff and Webb worked, (*id.* ¶ 29).  After complaining, plaintiff was reassigned to a new supervisor, Harold Fagan ("Fagan"), a much younger African-American male coworker at plaintiff's same managerial level whom plaintiff had helped to train.  (*Id.* ¶ 55-59.)  In plaintiff's original Complaint, she alleged that assigning her to report to Fagan was an "attempt at retaliation . . . for complaining about her rights and engaging in protected activity."  (Doc. 1 ¶ 33.)  And though the court noted in its Memorandum Opinion on the first Motion to Dismiss that reassignment to a younger supervisor does not constitute an adverse action under the *McDonnell Douglas* framework, (*see* doc. 10 at 13 n.8), plaintiff has retained this language within her Amended Complaint, (*see* doc. 14 ¶ 60.)

Sometime in 2011, defendant held a monthly managerial meeting; among the attendees were plaintiff, Webb, and Gary Smith.  (*Id.* ¶ 65.)  Plaintiff alleges that in the course of this meeting, Gary Smith discussed management's concerns that there were no African-American female managers in their distribution center, and a memorandum discussing affirmative action was circulated.  (*Id.* ¶ 66-67.)  Plaintiff further claims that it was represented to her at the meeting that defendant had "mandated a quota" for African-American females.  (*Id.* ¶ 69.)  At some point after the meeting in 2011, Fagan resigned, and plaintiff applied to the vacant position despite alleged protests from Gary Smith.  (*Id.* ¶ 70-75.)  She never received an interview for the position.  (*Id.* ¶ 76, 79.)

After she was denied an interview, plaintiff asked Gary Smith not to bar her from the position left open by Fagan's resignation, stating "[p]lease Gary, don't do this," but she claims that he told her he thought he was making the right decision.  (*Id.* ¶ 77-78.)  Ultimately, in October of 2011, defendant hired Lachera Church ("Church"), an African-American female who had not yet earned her bachelor's degree.  (*Id.* ¶ 83, 85, 87.)  Church was hired from outside the corporation and had far less managerial experience than plaintiff. (*Id.* ¶ 84, 86.)

Once plaintiff learned that Church had been hired, she discussed it with Gary Smith in order to determine whether she would be reporting to Church.  (*Id.* ¶ 88-89.)  Smith allegedly told plaintiff that he had not yet decided, and plaintiff requested that he not make Church her supervisor, saying "[d]on't put her over me, this is wrong."  (*Id.* ¶ 89-90, 92.)

5

Plaintiff alleges that immediately after this request, training that she had been scheduled to participate in was cancelled against her will. (*Id.* ¶ 93.)  She further alleges that this directly prevented her from gaining experience that would have increased her eligibility for future promotions. (*Id.* ¶ 94.)  She does not, however, state what sort of promotions she would have been entitled to, or specifically mention any promotions she was denied because of the cancelled training.  By March of 2011, Church had become plaintiff's supervisor. (*Id.* ¶ 95.) When Church allegedly expressed to plaintiff that she did not know why she was evaluating her, plaintiff explained that it was because Gary Smith wanted to hurt plaintiff. (*Id.* ¶ 96-97.) By March 2012, plaintiff's supervisor had been changed at least six times. (*Id.* ¶ 106-07.)

Several months later, in January of 2012, plaintiff filled out an online survey with defendant. (*Id.* ¶ 98.)  Plaintiff gave defendant a poor review—specifically in regards to company ethics, allowing employees to speak their mind, its support of diversity, equal opportunity for its employees, and its lack of internal promotions. (*Id.* ¶ 99-104.)  In addition, in 2012, Gary Smith created two new management positions: one was filled by fellow employee Tim Sullivan and was never interviewed for, and the other was filled by an outside employee. (*Id.* ¶ 108, 110-111.)[3]  Finally, on April 23, 2012, defendant informed plaintiff that her position was being eliminated, effective April 30, 2012, without any explanation. (*Id.* ¶ 112-113.)  Plaintiff alleges that there were other vacant managerial

---

[3]  Again, plaintiff has retained an allegation from her first Complaint, claiming that the outside employee was "introduced to every manager but [p]laintiff," (doc. 14 ¶ 111), despite this court's observation that non-introduction is not an adverse action, (doc. 10 at 13 n.8).

6

positions at the time, but that she was not permitted to interview for them.  (*Id.* ¶ 115.)  She further claims that the elimination of her position and subsequent termination were in retaliation for her engaging in protected activity.  (*Id.* ¶ 116.)

On June 1, 2012, plaintiff filed her Complaint against defendant alleging claims of interference and retaliation in violation of the FMLA, as well as race discrimination and retaliation in violation of 42 U.S.C. § 1981.  (Doc. 1.)  Defendant filed a Motion to Dismiss and Brief in Support on June 27, 2012, (docs. 4 & 5), arguing that all four Counts were due to be dismissed, "[e]xcept for the claim in Count Three where Plaintiff, a Caucasian, alleges she sought a promotion for which an African-American was selected," (doc. 4 ¶ 3).  Upon consideration of the parties' arguments, this court denied defendant's Motion as to both of plaintiff's FMLA counts (Count I and Count II), and granted it as to any claims alleged in plaintiff's § 1981 racial discrimination count (Count III) other than the failure to promote claim, as well as to all of plaintiff's § 1981 retaliation count (Count IV).  (Doc. 11.)  The court then granted plaintiff leave to amend her Complaint, (doc. 11), which she filed on August 31, 2012, (doc. 14).  Contemporaneously with its Order and Memorandum Opinion on defendant's first Motion to Dismiss, this court also issued an Order directing plaintiff to file an Amended Complaint in compliance with the Federal Rules of Civil Procedure, (doc. 12), given that her first Complaint had not been clear as to which claims were supported by which facts, (*see* doc. 1).  The court further stated that "[e]ach count in the Amended Complaint should contain no more than one discrete claim for relief," that it must include

"allegations of fact which support each discrete claim," and that "the facts pertaining to each cause of action should be clearly labeled and delineated." (Doc. 12 at 2.) After plaintiff filed her Amended Complaint, defendant filed its second Motion to Dismiss and Brief in Support. (Docs. 15 & 16.)

## III.  DISCUSSION

Before addressing the parties' arguments, it is worth noting that both of defendant's Motions to Dismiss in this case have been somewhat atypical.  Specifically, in both Motions defendant agrees that there are viable claims, but limits this admission to specific facts alleged in certain paragraphs within the Complaint and Amended Complaint.  (*See* doc. 5 at 11; doc. 16 at 1, 6.)[4]  The court understands this as defendant's attempt to limit the number of potential claims within each count, potential damages, and the scope of discovery.[5]

---

[4]  Plaintiff has also observed that this method is not typical, noting that "the undersigned counsel is not sure exactly what relief [d]efendant seeks from this Court insofar as it moves to dismiss any of [p]laintiff's claims under the FMLA.  If anything, the undersigned counsel supposes that [d]efendant may be petitioning for a limitation of the scope of [p]laintiff's damages . . . or otherwise attempting to limit the scope of [p]laintiff's claims in this lawsuit to the precise facts as they are alleged in her initial pleading . . . ." (Doc. 18 at 4-5.)

[5]  The court will entertain defendant's attempt to limit and define any possible claims through its Motion to Dismiss in part because it also entertained defendant's first Motion to Dismiss where it requested dismissal of all claims, including all those in Count Three "[e]xcept for the claim in Count Three where [p]laintiff . . . alleges she sought a promotion for which an African-American was selected," (doc. 4 ¶ 3).  However, this method of defining the claims in an unclear complaint is not the preferred course of action.  *See Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) (noting that a Rule 12(b)(6) motion's purpose is to test the facial sufficiency of the claim for relief; it is "not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity").  In the future, at least in cases before the undersigned judge, when faced with this sort of complaint defense counsel should consider filing a motion for more definite statement under

8

### A. FMLA Interference and Retaliation

Defendant first addresses plaintiff's FMLA claims, alleging that "Counts One and Two are completely shotgun and unspecific about what adverse actions [plaintiff] claims amounted to either FMLA interference or FMLA retaliation." (Doc. 16 at 7-8.) While defendant acknowledges that plaintiff has stated a claim for FMLA interference and FMLA retaliation based on the court's ruling in its Opinion on defendant's first Motion to Dismiss, (*see* doc. 10 at 11-12), it takes issue with the fact that when plaintiff amended her Complaint, she did not remove allegations which the court noted either "do not constitute adverse actions," or were too remote to satisfy the causation prong of the *McDonnell Douglas* framework. (*See* doc. 16 at 9-10 (quoting doc. 10 at 13 n.8.).) Plaintiff responds, agreeing that these alleged facts "would not alone support [p]laintiff's claims for FMLA Retaliation," but arguing that she has unquestionably stated a claim for retaliation under the FMLA. (Doc. 18 at 4.) She further states that, pursuant to the court's Opinion, (doc. 10), she specifically labeled only certain paragraphs as supporting her FMLA claims, and that they did not include

---

Federal Rule of Civil Procedure 12(e). In fact, a case that defendant heavily relies upon, *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955 (11th Cir. 2008), (*see* doc. 16 at 6-8, 12-14), points out that when there is an unclear shotgun pleading, this is the appropriate course of action. *See Davis*, 516 F.3d at 983-84. The purpose of a Rule 12(e) motion is served "[w]here, as here, the plaintiff asserts multiple claims for relief, [because] a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b)." *Davis*, 516 F.3d at 984 (citing *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

"allegations of termination or other temporally adverse employment actions." (Doc. 18 at 4 n.2.)[6]  Apparently appeased because plaintiff "concedes . . . that her FMLA claims do not include temporally remote adverse employment actions," (doc. 19 at 1), defendant's Reply focuses on plaintiff's § 1981 claims, but notes that plaintiff's request for reinstatement is no longer an available remedy to her because it is only available for termination claims. (Doc. 19 at 6.)

After reviewing all of the above arguments made by the parties, it is apparent that they do not have a true disagreement as to Counts I and II.[7]  Though plaintiff has added several additional facts to her FMLA claims in the Amended Complaint, (*see* doc. 14 ¶ 29-61), defendant does not challenge this part of plaintiff's FMLA interference or retaliation claim. (*See* doc. 16 at 8-9.)  The court agrees with the parties and with its earlier Opinion on the matter.  Therefore, the court again notes that plaintiff has stated a claim for both FMLA interference and retaliation.  However, to be clear, these two Counts rest only on plaintiff's

---

[6]  While this is true, as noted earlier, the FMLA section of the Amended Complaint did still retain facts regarding reassignment to Fagan, (doc. 14 ¶ 55-61), which the court has held would not constitute adverse employment action, (doc. 10 at 13 n.8).  Additionally, the court notes that while plaintiff contends that she complied with the court's Order to replead, (doc. 12), the Amended Complaint suffers from similar defects as the original Complaint.  (*See* doc. 14.) While adding headings to the facts has been an improvement, by "adopt[ing] and re-alleg[ing] each and every allegation contained in this Complaint," within every Count, (*see* doc. 14 ¶¶ 117, 120, 123, 127), without specifying which discrete act supports each Count, plaintiff has not complied with this court's Order, or with Rule 10(b).  (*See* doc. 12); Fed. R. Civ. P. 10(b). Nevertheless, because dismissal for failing to properly plead or noncompliance with a court order is a drastic measure, *see Beckwith v. Bellsouth Telecommunications Inc.*, 146 F. App'x 368, 372 (11th Cir. 2005), the court allows plaintiff's FMLA claims to move forward.

[7]  Counsel for both parties confirmed this at oral argument.

specific allegations regarding the reduction of her base salary.[8]  (*See* doc. 14 ¶¶ 31-51.)

Furthermore, because plaintiff retained language regarding reassignment within the FMLA

fact section of her Amended Complaint, (*see id.* ¶¶ 52-61), the court again notes that "[t]o

the extent plaintiff contends that . . . reassignment . . . constitute[s] a claim of FMLA

retaliation, the court finds that [it] do[es] not constitute [an] adverse action[] under the

*McDonnell Douglas* framework.  *See Foshee* [*v. Ascension Health-IS, Inc.*], 384 F. App'x

[890,] 891 [(11th Cir. 2010) (per curiam).]"  (Doc. 10 at 13 n.8.)

Additionally, because plaintiff did not retain "allegations of termination or other

temporally remote adverse employment actions," (doc. 18 at 4 n.2), within the FMLA section

of her Amended Complaint, and states that "only ¶¶ 29-61" support her FMLA claims, (*id.*),

defendant's arguments against plaintiff's re-alleging the same actions which the court had

already determined were not actionable need not be considered.  The same is true for any new

facts that plaintiff added into the "Race Discrimination and Retaliation" portion of her

Amended Complaint, such as the allegation that plaintiff's training was cancelled

immediately after her request that she not be placed under Church.  (Doc. 14 ¶¶ 92-94; *see*

*also* doc. 16 at 10-11 (arguing that new facts in Amended Complaint found within "Race

Discrimination and Retaliation" fact section are too remote and do not constitute adverse

---

[8] As defendant observes, plaintiff has altered the language that the court originally held
sufficient to state an FMLA claim in the first Complaint.  (Doc. 16 at 8.)  However, the substance
of each claim remains the same, and plaintiff explains that she "revised the factual language
supporting these claims in an attempt to add specificity and clarity."  (Doc. 18 at 2 n.1.)

employment actions for purposes of FMLA claims).)  Once plaintiff made clear that she was not attempting to use any facts other than those in ¶¶ 29-61 to support her FMLA claims, defendant's initial arguments as to these allegations became moot.[9]

Finally, the court agrees with defendant that reinstatement is no longer a feasible remedy for plaintiff's surviving FMLA allegations.  Among other remedies, the FMLA states that "[a]ny employer who violates section 2615 of this title shall be liable to any eligible employee affected . . . for such equitable relief as may be appropriate, including . . . reinstatement." 29 U.S.C. § 2617(a)(1)(B).  Section 2615 sets forth the provisions for FMLA interference and retaliation.  *See See Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001) ("[T]he FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2) . . . .").  However, the Supreme Court has discussed the remedies available under the FMLA, noting that

---

[9]  The clarification was needed because though plaintiff did label two factual sections in the Amended Complaint, as discussed earlier, each Count states that it "adopts and re-alleges each and every allegation contained in this Complaint,"  (doc. 14 ¶¶ 117, 120, 123, 127), creating confusion as to which facts plaintiff was relying on for each Count.  However, as already noted, once plaintiff's claims were clarified in her Response, (doc. 18), defendant's Reply ceased to focus on her FMLA claims, (*see* doc. 19).

> To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights.  Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). *The remedy is tailored to the harm suffered*.

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (emphasis added).  Thus, despite the fact that § 2617(a)(1)(B) does not explicitly specify that reinstatement (or other equitable relief) ought only be used as a remedy where the termination is a direct result of the violation, it is implicit that equitable relief would not be "appropriate" in a case where the termination did not result from an FMLA violation.  *See Bender v. City of Clearwater*, 8:04-CV-1929-T23EAJ, 2006 WL 1046944, *12 (M.D. Fla. Apr. 19, 2006) ("An employer can deny the right of reinstatement if it can demonstrate that it would have discharged the employee had he not been on FMLA leave." (citing *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000))).  Though plaintiff still has cognizable FMLA claims, because the facts surrounding her eventual termination do not support an FMLA claim, it follows that she will never be able to prove that reinstatement is an appropriate remedy.[10]

---

[10]  Moreover, this court has already specifically addressed how any claim that plaintiff was terminated because she took FMLA leave fails to satisfy the causation prong of *McDonnell Douglas*.  (*See* doc. 10 at 13 n.8.)

13

**B. Section 1981 Discrimination**

In its first Motion to Dismiss, defendant moved only to dismiss any other potential claims of race discrimination that were contained within Count III of plaintiff's initial Complaint, but agreed that any claims surrounding Church's selection were not due to be dismissed.  (*See* doc. 4 ¶ 3.)  Now, plaintiff has amended her Complaint to include more specific facts in regards to the selection of Church, as well as a number of new, seemingly unrelated facts.  (*See* doc. 14 ¶¶ 62-107.)  Just as it did in regards to plaintiff's original Complaint, defendant has moved to dismiss any additional potential race discrimination claims that these new facts might conceivably allege.  (Doc. 16 at 11-14.)  However, plaintiff clarifies in her Response that "[p]laintiff did not did not attempt to state any other claim of race discrimination in Count III of its [sic] Amended Complaint," and goes on to argue that defendant's arguments are therefore moot.  (Doc. 18 at 5-6.)  Accordingly, in its Reply defendant (again) ceases its arguments regarding plaintiff's § 1981 discrimination claims, noting that plaintiff "concedes her § 1981 claim is limited to the 2011 promotion claim."  (Doc. 19 at 1.)

Once again, it appears that defendant and plaintiff do not ultimately disagree as to which facts support plaintiff's Count III race discrimination claim.[11]  However, plaintiff's labeling of ¶¶ 62-116 as supporting both "Race Discrimination and Retaliation," (doc. 14 at

---

[11]  Again, counsel for the parties confirmed this at oral argument.

9), along with her "adopt[ion] and re-alleg[ing] of each and every allegation" in the Amended Complaint, (*id.* ¶ 123), has operated to muddy the waters as to what the alleged discrete, discriminatory acts, actually are.  This type of confusion is exactly what the requirements of Rules 8(a)(2) and 10(b) are in place to avoid.  *See Davis*, 516 F.3d at 980 n.57 (explaining that the "rules work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted" (quoting *Fines v. City of Daphne*, 79 F.3d 1079, 1082-83 (11th Cir. 1996)))*.

Therefore, though any disagreement as to plaintiff's § 1981 discrimination claim seems to have been resolved, in the interest of clarity, the court will follow its first Opinion on the matter and make clear that the only discrete act supporting a claim of § 1981 racial discrimination is plaintiff's failure to promote claim regarding Lachera Church, re-alleged in paragraphs 81-87 of the Amended Complaint.  Any other potential claims are dismissed because they fail to state a claim on which relief can be granted.

### C. Section 1981 Retaliation

As defendant's Reply eventually makes clear, (*see* doc. 19 at 1), Plaintiff's § 1981 retaliation claim is the only truly contested issue on this second Motion to Dismiss.  Just as it did for plaintiff's first Complaint, defendant moves to dismiss the entirety of plaintiff's § 1981 retaliation claims.  (Doc. 15 at 2; doc 16 at 14-15.)  Plaintiff claims that to "remedy

th[e] deficiency" in her original Complaint, she has added "specific factual allegations that allege protected activity." (Doc. 18 at 7.) However, defendant notes—and the court agrees—that it still is not clear what, exactly, plaintiff alleges is **the** discrete act of retaliation in Count IV.[12] (*See* doc. 19 at 1-2.) Additionally, even aside from defendant's observation that this claim is neither in compliance with this court's Order to replead, (doc. 12), nor Rule 10(b), defendant argues that the claim is due to be dismissed because none of the facts alleged can even plausibly support a § 1981 retaliation claim. (Doc. 19 at 2.) The court is in agreement with defendant that plaintiff's § 1981 retaliation claim is due to be dismissed in its entirety.

In order to plead a claim for § 1981 retaliation, a plaintiff need not prove a prima facie case; rather she need only "provide enough factual matter (taken as true) to *suggest* intentional race discrimination." *Uppal v. Hosp. Corp. of Am.*, 11-13614, 2012 WL 2136156, *1 (11th Cir. 2012) (emphasis added) (quoting *Davis*, 516 F.3d at 974). It follows that the plaintiff must allege facts which suggest that a prima facie case might be proven. This requires showing that: "[(1)] he engaged in statutorily protected activity, [(2)] he suffered a

---

[12] For example, as plaintiff has illustrated in her Response, the Amended Complaint alleges under "Race Discrimination and Retaliation" that plaintiff plead with her supervisor when she learned that she was denied an interview for an open position, (doc. 14 ¶ 77), she plead with him again when she learned he had placed Church above her, (doc. 14 ¶ 92), and she replied negatively to an online company survey, (doc. 14 ¶¶ 98-105). As defendant correctly observes in its Reply, these are *three* discrete and separate actions, (doc. 19 at 1-2), and if plaintiff alleges they are each actionable, they should have been placed in separate counts in accordance with this court's Order, (*see* doc. 12).

materially adverse action, and [(3)] there was some causal relation between the two events. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).  In a § 1981 retaliation case, "[a]s with other statutory retaliation claims, . . . the protected activity [must] involve the assertion of rights encompassed by the statute." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1311 (11th Cir. 2010).  Section 1981, along with Title VII, "prohibit[s] an employer from retaliating against an employee for reporting discrimination or filing a charge of discrimination." *Davis v. Dunn Const. Co., Inc.*, 2:10-CV-2075-RDP, 2012 WL 1952125, *1 (N.D. Ala. May 24, 2012) (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008)).  Thus, "statutorily protected activity includes complaining to superiors of [racial] harassment or discrimination and lodging complaints with the EEOC." *Id.* at *18 (citing *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001)).

Furthermore, courts have held that in order to establish a causal connection between an adverse action and the employee's protected activity, "a plaintiff must prove the protected activity and the adverse action are not completely unrelated." *Young v. Napolitano*, 1:10-CV-1584-CAP-GGB, 2011 WL 2519529, *4 (N.D. Ga. June 24, 2011) (citing *Davis*, 516 F.3d at 978 n.52).  This includes showing "at a minimum . . . that the adverse act followed the protected conduct[, which] stems from the important requirement that the employer was actually aware of the protected expression at the time it took adverse employment action." *Prowell v. Ala. Dep't of Human Res.*, 2:10-CV-2993-VEH, 2012 WL 3848667, *12 (N.D.

Ala. Sept. 5, 2012) (quoting *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999)) (internal quotation marks omitted).  Finally, as mentioned in this court's prior Opinion, (*see* doc.10 at 13 n.8), the time that has elapsed between the protected conduct and adverse employment action is relevant to causal connection: "in this circuit, lapses of time of more than three months between the alleged adverse action and the employee's statutorily-protected activity uniformly have been found to be insufficient to demonstrate a causal connection, as required to establish a *prima facie* case."  *Byrne v. Ala. Alcoholic Beverage Control Bd.*, 635 F. Supp. 2d 1281, 1297-98 (M.D. Ala. 2009) (citing several examples).

The first of plaintiff's allegations that could potentially be construed as supporting a retaliation claim is the allegation that plaintiff plead with her supervisor after she was denied an interview, saying "[p]lease Gary, please don't do this."  (Doc. 14 ¶ 77.)  Plaintiff claims that this "is a factual scenario that alone supports retaliation under § 1981."  (Doc. 18 at 7.) Conversely, defendant claims that this fails as a retaliation claim for three main reasons: (1) it does not refer to race discrimination; (2) it occurred after defendant's decision not to interview took place; (3) it is too remote to satisfy the causation requirement.  (Doc. 19 at 2.) The court agrees with defendant.

First, defendant is correct in that the allegation does not refer to race discrimination. As this court noted in its last Opinion, "[i]n the absence of any facts alleging racial discrimination or retaliation as a result of protected activity, plaintiff's accusation of retaliation is a mere recitation of formalistic elements insufficient to state a cause of action."

18

(Doc. 10 at 18.)  Similarly, the Amended Complaint lacks facts which indicate that plaintiff engaged in protected activity—specifically, complaints of race discrimination.  As discussed above, to be considered protected activity under § 1981, any complaints must include some sort of reference to race discrimination or harassment.  *See, e.g.*, *Davis*, 2012 WL 1952125, at *18 (no protected activity where plaintiff complained about pay rate, but never alleged that he complained he was being paid less *because* of his race); *Enadeghe v. Ryla Teleservices, Inc.*, CIV.A 108-CV-3551-TW, 2010 WL 481210, *9 (N.D. Ga. Feb. 3, 2010) ("Plaintiff has not engaged in activity protected by Section 1981 because she has failed to allege that she complained in any manner about race discrimination or that her underlying complaints about the noise and touching in any way related to her race.").  Here, plaintiff merely alleged that she complained to her supervisor about being denied an interview; there is no allegation that she complained she was being denied an interview *because* she was white.  (*See* doc. 14 ¶ 77.)  And as defendant observes, though plaintiff alleges that there was a meeting regarding affirmative action, she does not allege that her complaint was made near the time of the meeting.  (*See id.* ¶¶ 65-79).  Plaintiff cannot simply rely on her employer—or the court—to infer that she complained of racial discrimination.  *See Demers v. Adams Homes of Nw. Florida, Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009) ("[T]o engage in protected activity, the employee must . . . communicate her belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred." (internal quotation marks and citations omitted)).

19

Moreover, even if protected activity could be inferred, defendant also observes that plaintiff complained *after* she was barred from interviewing.  On this matter, the law is clear: If the complaint occurred after the alleged adverse employment action, then the employer could not have been aware of it at the time he was making the decision.  *See Griffin*, 182 F.3d at 1284 (stating that the adverse act must follow the protected conduct so that the employer is aware of the complaints); *see also, e.g.*, *Foster v. Select Med. Corp.*, 6:11-CV-1234-J-37GJK, 2012 WL 1415499, *7 (M.D. Fla. Apr. 24, 2012) (dismissing retaliation claim on motion to dismiss because plaintiff did not provide facts alleging that the protected conduct occurred before the adverse action, or that therefore, the employer was aware of the protected conduct).  Upon close inspection and reading the Amended Complaint liberally, perhaps plaintiff could state a claim for retaliation if the alleged adverse action were not the failure to interview, but rather, the selection of Church instead of herself for the position.  In such a scenario, the alleged adverse action would have occurred after plaintiff's complaints; however, plaintiff still, in that case, would not have properly alleged that she engaged in protected activity.[13]

---

[13] Plaintiff's Response does little to shed light on which adverse action she is alleging, stating that "[p]laintiff learned her supervisor was looking to hire a black female, plead for the same supervisor to not bar her from selection for an open position, was denied an interview, and was then non-selected in favor of a black female." (Doc. 18 at 7.)  Defendant alleges that plaintiff claims the adverse action is the failure to interview, (doc. 19 at 3), then states that "[a]ll other alleged adverse employment actions occurred in 2012," so they are too remote to show a casual connection, (*id.* at 3).  However, plaintiff does allege that Church was selected instead of herself in October of 2011.  (Doc. 14 ¶ 83.)  Though the selection of Church instead of plaintiff is certainly connected to the failure to interview plaintiff, the promotion of another employee

Second, plaintiff argues in her Response that her Amended Complaint also sets forth facts which could support a § 1981 retaliation cause of action by alleging that plaintiff complained to Gary Smith about making Church her supervisor.  (Doc. 18 at 7 (quoting doc. 14 ¶ 92).)  She alleges that as a result of this, her scheduled training was cancelled, preventing her from gaining experience that "would have increased her eligibility for future promotions."  (Doc. 14 ¶ 93-94.)  Again, plaintiff's allegations do not indicate that her complaint was protected activity because it lacks any facts tying it to race.  *See Demers*, 321 F. App'x at 852.  As defendant has observed, the Amended Complaint itself indicates that plaintiff could have been complaining because there was personal animosity between herself and Gary Smith.  (*See* doc. 19 at 3-4.)  Moreover, based on the facts alleged, plaintiff could have been complaining because Church was less experienced, less educated, an outside hire, or even because plaintiff had wanted the position herself.  (*See* doc. 14 ¶¶ 83-84, 86-88.) Without any allegations that plaintiff was complaining about racial discrimination, the court cannot find that plaintiff has alleged that she engaged in any protected activity.  Therefore, plaintiff's § 1981 retaliation claim cannot be based on her complaint to Gary Smith.  (*See*

---

instead of plaintiff could also constitute an adverse action—one which was not alleged to have occurred before plaintiff's complaint.  (*See* doc. 14 ¶ 83.)  Moreover, given the lack of specifics as to what date plaintiff complained to Gary Smith, (*see* doc. 14 ¶ 77), the court cannot say at this point that the time lapse between plaintiff's complaints and the hiring of Church was too remote. However, defendant is correct that all other alleged adverse employment actions (all occurring in 2012) would be too remote to suggest causation.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough.").  But, even if adverse action could be inferred, as noted, plaintiff does not allege that she engaged in protected activity.

doc. 14 ¶¶ 92-94.)[14]

Third and finally, plaintiff alleges that in January of 2012, she participated in an online survey with defendant where she responded negatively to every prompt, including those asking about company ethics, fairness, and promotion of diversity, among others. (Doc. 14 ¶¶ 98-105.)  She further claims that in March of 2012 she was again reassigned to report to Church, (*id.* ¶ 107), then states that on April 23, 2012, her position was eliminated, (*id.* ¶ 112).  These facts, too, fail to state a claim on which relief can be granted.  As defendant observes, not only has plaintiff failed to allege that she complained about race discrimination—i.e., alleged protected activity[15]—but, she has also not alleged a causal connection because there is no allegation that her supervisors knew of her complaints.  (Doc. 19 at 4-5.)  *See Griffin*, 182 F.3d at 1284 (employer must be aware of protected conduct at time of adverse action); *see also, e.g., Enadeghe*, 2010 WL 481210, at *9 (dismissing

---

[14]  Moreover, even had plaintiff claimed that she engaged in protected activity, the court doubts that she would have been able to withstand a motion to dismiss on these facts as alleged. Specifically, claiming that plaintiff's job training cancellation was an adverse action that "directly prevented [p]laintiff from gaining experience that would have increased her eligibility for future promotions," (doc. 14 ¶ 94), is vague at best.  In order to show an adverse action, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse," which means that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229 (11th Cir. 2011) (internal quotation marks and citations omitted).  Nevertheless, the court need not address the issue at this point because plaintiff has clearly failed to allege protected activity.

[15]  Though the survey plaintiff took did mention diversity, it did not operate as a claim that she was being discriminated against.  At most, the survey simply operated as a general observation of company operations; stating that a company does not *support* diversity is not the same as complaining of actual discrimination.

retaliation claim because plaintiff "d[id] not identify the individual who made the decision to terminate her in her Complaint, and she d[id] not allege that the decisionmaker was aware that she complained about any discriminatory conduct"). Finally, because reassignment is not an adverse action, (*see* doc. 10 at 13 n.8), the only adverse action that plaintiff could be alleging resulted from her negative survey results is her ultimate termination, (*see* doc. 14 ¶ 112). However, this was more than three months from the time that plaintiff completed the survey, which this court has already observed is too long a time lapse to satisfy the causal connection prong of a prima facie case of retaliation. *See Byrne*, 635 F. Supp. 2d at 1297-98. Therefore, plaintiff has not stated a retaliation claim based on her alleged survey responses. Defendant's Motion is due to be granted as to the entirety of plaintiff's claim of retaliation under § 1981.

## IV. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is due to be granted as to any claims of FMLA interference and retaliation other than those alleging a reduction of plaintiff's base salary. Defendant's Motion to Dismiss is due to be granted as to any claims of discrimination under § 1981 other than the failure to promote claim alleged in paragraphs 81-87 of the Amended Complaint. Defendant's Motion to Dismiss is due to be granted as to plaintiff's § 1981 retaliation claim. An Order in accordance with this Memorandum Opinion will be entered contemporaneously with this Opinion.

**DONE** this 2nd day of September, 2013.

*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE